**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| KENNETH HOLMES,<br>　　　　　Appellant, | DOCKET NUMBER<br>SF-0752-22-0425-C-1 |
| v. | |
| DEPARTMENT OF<br>　TRANSPORTATION,<br>　　　　　Agency. | DATE:  February 20, 2025 |

# THIS ORDER IS NONPRECEDENTIAL[1]

Sara L. Bloom, Esquire, Anchorage, Alaska, for the appellant.

Maria Teresa Davenport, Esquire, Anchorage, Alaska, for the agency.

Daniel James Silva, Miramar, Florida, for the agency.

**BEFORE**

Cathy A. Harris, Chairman
Henry J. Kerner, Vice Chairman
Raymond A. Limon, Member

**ORDER**

The agency has filed a petition for review of the compliance initial decision, which granted the appellant's petition for enforcement and found the agency in noncompliance with the Board's final order reversing the appellant's

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

removal. For the reasons set forth below, we DENY the agency's petition for review and AFFIRM the compliance initial decision's finding that the agency is in noncompliance with the Board's final order concerning the appellant's reinstatement.

## BACKGROUND

The agency issued a decision removing the appellant from his position as a FV-0802-H Engineering Technician (802 ET) based on the charge of inability to perform the essential functions of his position because of a medical condition. *Holmes v. Department of Transportation*, MSPB Docket No. SF-0752-22-0425-I-1, Initial Appeal File (IAF), Tab 6 at 14-18. The appellant retired in lieu of removal on December 22, 2020. IAF, Tab 9 at 128-29.

On appeal, the appellant challenged the merits of the charge and raised allegations of disparate treatment disability discrimination, retaliation for making a reasonable accommodation request, and discrimination based on a denial of a reasonable accommodation. IAF, Tabs 1, 14, 43. The administrative judge properly found that the Board had jurisdiction over the removal action.[2] IAF, Tab 11. He then issued an initial decision reversing the appellant's removal and ordering the agency to restore the appellant effective December 22, 2020. IAF, Tab 60, Initial Decision (ID) at 47. Specifically, the administrative judge found that the agency did not prove its charge, ID at 15-40, that the appellant proved his affirmative defense of disability discrimination based on a denial of a reasonable accommodation, ID at 40-41, and that the appellant did not establish his claim of disparate treatment disability discrimination or his claim of retaliation for making a reasonable accommodation request, ID at 42-47. Following the agency's petition for review, the Board issued a January 22, 2024 Final Order affirming the

---

[2] When an employee decides to retire because his employing agency has issued a decision to remove him and the employee retires on the date the removal was to become effective, the employee does not lose the right to file a Board appeal contesting the removal. *Scalese v. Department of the Air Force*, 68 M.S.P.R. 247, 249 (1995).

initial decision and again ordering the agency to reverse the appellant's removal and restore him effective December 22, 2020, within 20 days of the Board's decision. *Holmes v. Department of Transportation*, MSPB Docket No. SF-0752-22-0425-I-1, Final Order (Jan. 22, 2024); *Holmes v. Department of Transportation*, MSPB Docket No. SF-0752-22-0425-I-1, Petition for Review File, Tab 6, Final Order at 21. In the Final Order, the Board ordered the agency to pay the appellant the correct amount of back pay, interest on back pay, and other required benefits. *Id.*

On February 15, 2024, the appellant filed a petition for enforcement regarding the reinstatement portion of the Board's January 22, 2024 Final Order. *Holmes v. Department of Transportation*, MSPB Docket No. SF-0752-22-0425-C-1, Compliance File (CF), Tab 1. He claimed that the agency had not reinstated him to his prior position by the deadline in the Final Order even though he was ready, willing, and able to return to work.[3] *Id.* While the appeal was pending before the administrative judge, the agency submitted documentation contending that it had returned the appellant to duty on April 8, 2024, and that it was in compliance with the Board's reinstatement order. CF, Tab 11. The agency explained that it had exercised its "right to assign work" and decided that the appellant should be returned full-time to the Complex, but still as an 802 ET.[4] *Id.*

---

[3] This petition for enforcement is one of four addendum proceedings in this appeal: *Holmes v. Department of Transportation*, MSPB Docket No. SF-0752-22-0425-A-1, concerns the appellant's request for attorney's fees; *Holmes v. Department of Transportation*, MSPB Docket No. SF-0752-22-0425-P-1, concerns the appellant's request for compensatory damages; and *Holmes v. Department of Transportation*, MSPB Docket No. SF-0752-22-0425-C-2, is a petition for enforcement concerning the backpay component of the Final Order.

[4] In the Board's January 22, 2024 Final Order, we determined that the essential functions of the 802 ET position include some Contracting Officer Representative (COR) duties, which is project coordinator work that involves monitoring Federal contractors performing installation and construction at various worksites; some work at the "Complex," a warehouse facility that Engineering Services uses to store items and build out projects; and some installation and construction work. Final Order at 7-11. We agreed with the administrative judge that the appellant showed he could perform

at 7; CF, Tab 12. The appellant's new supervisor, R.N., who testified at the hearing in the removal appeal, determined that the appellant was incapable of performing enough installation and construction work to contribute to the unit and that the agency would not be assigning him such duties. CF, Tab 11 at 50-52, Tab 12 at 6-9. The appellant, however, argued that the agency was still not in compliance with the reinstatement order because its delay was inexcusable and because it had improperly assigned him full-time to the Complex without engaging in an interactive process with him to determine the installation and construction duties he could perform both with and without accommodation. CF, Tab 13.

The administrative judge subsequently issued a compliance initial decision finding the agency in noncompliance with the Board's Final Order. CF, Tab 14, Compliance Initial Decision (CID) at 1. The administrative judge recognized that the agency returned the appellant to work as an 802 ET, but he concluded that the agency did not properly reinstate the appellant to a position encompassing the same duties. CID at 5-11. The administrative judge noted that installation and construction duties are essential functions of the 802 ET position and that stationing the appellant at the Complex was modifying his duties and the essential functions of the position.[5] CID at 8, 11. The administrative judge considered R.N.'s declaration that based on the medical information from the removal appeal the appellant could not perform, with or without accommodation, enough installation and construction duties to advance the Agency's mission—even though the appellant maintained he was ready and willing to do installation and

_____

work in the Complex, COR work, and some installation and construction work, both with and without accommodations. *Id.* at 7-15. Nevertheless, we recognized, as did the administrative judge, that the 802 ET position currently involves mostly installation and construction duties, and that COR duties and work at the Complex are now performed by employees in a different job series. *Id.*

[5] The administrative judge explained that R.N. indicated that work at the Complex is now typically performed by 346 Logistics Management Specialists, whose work does not involve the essential functions of installation and construction duties. CID at 8.

construction work—but ultimately determined that the agency did not show that it had a strong overriding interest or compelling reason for limiting the appellant's duties solely to the Complex, and that, in fact, the agency's actions constituted a clear declaration of noncompliance with the Board's Final Order. CID at 5-16. The administrative judge thus concluded that the agency had not returned the appellant to duties consistent with his 802 ET position and had not engaged in a renewed interactive process with him to ascertain what particular accommodations, if any, he needed to perform those duties, and he granted the petition for enforcement. CID at 16-17.

In its petition for review of the compliance initial decision, the agency argues that the administrative judge incorrectly found that it did not comply with the Board's reinstatement order, Compliance Petition for Review (CPFR) File, Tab 1 at 14-21, that the compliance initial decision improperly permits the Board to "micromanage" the agency's assignment of work, *id.* at 21-23, and that the administrative judge's erroneous decision in this case "infected" the other addendum proceedings in this appeal, *id.* at 23-24.[6] The agency also submits a declaration from its human resources director discussing the appellant's backpay and related documentation. *Id.* at 26-112. The appellant filed a response, and the agency filed a reply. CPFR File, Tabs 3, 4.

## ANALYSIS

When the Board corrects a wrongful personnel action, it is required to ensure that the employee is returned, as nearly as possible, to the status quo ante. *Kerr v. National Endowment for the Arts*, 726 F.2d 730, 733 (Fed. Cir. 1984). The agency bears the burden of proving compliance with the Board's order by a preponderance of the evidence. *Vaughan v. Department of Agriculture*, 116 M.S.P.R. 319, ¶ 5 (2011); 5 C.F.R. § 1201.183(d). An agency's assertions of

---

[6] The agency submitted one petition for review for all four addendum proceedings. CPFR File, Tab 1 at 4. The petition for review almost exclusively addresses issues presented in this specific appeal.

compliance must include a clear explanation of its compliance actions supported by documentary evidence. *Vaughan*, 116 M.S.P.R. 319, ¶ 5. The appellant may rebut the agency's evidence of compliance by making specific, nonconclusory, and supported assertions of continued noncompliance. *Id.*

Restoration to the status quo ante requires that the employee be placed back in his former position or in a position substantially equivalent in scope and status to his former position. *Taylor v. Department of the Treasury*, 43 M.S.P.R. 221, 224-25 (1990). If the agency does not return the employee to his prior position and prior duties, it must show first that it has a strong overriding interest or compelling reason requiring reassignment to a different position, and second that it has reassigned the employee to a position that is substantially similar to the former position. *Gorny v. Department of the Interior*, 115 M.S.P.R. 520, ¶ 6 (2011). In analyzing such an issue, the Board must look beyond the title and grade of the positions involved and must compare the scope of the actual duties and responsibilities of the new position with those of the former position. *Id.*

We agree with the administrative judge that the agency is not in compliance with the Board's order.

Here, the administrative judge concluded that although the agency returned the appellant to an 802 ET position of the same title and grade, there was "no question" that it had not returned him to a position encompassing the same duties because it adamantly maintained that it would not assign the appellant installation and construction work, and, therefore, the appellant would in actuality be functioning as a 346 Logistics Management Specialist (346 LMS) instead of an 802 ET. CID at 11. The administrative judge further concluded after a thorough discussion that the agency did not show that it has a strong overriding interest or compelling reason for limiting the appellant's duties to those of a 346 LMS working at the Complex. CID at 11-16. We see no error in the administrative judge's analysis. *Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 106 (1997) (finding no reason to disturb the administrative judge's findings when she

considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions).

On review, the agency argues that the administrative judge erred legally in finding that it did not restore the appellant to an 802 ET position with duties substantially equivalent in scope and status to those performed by other 802 ETs. CPFR File, Tab 1 at 15. It maintains that although work at the Complex—which involves support functions such as handling FedEx, cargo, and other deliveries, procuring supplies and materials for upcoming projects, and managing tool and equipment inventories—is not the same as installation and construction duties performed in the field, the administrative judge did not meaningfully assess whether these functions are nonetheless substantially equivalent in scope and status. *Id.* However, such a contention is without merit. The administrative judge explicitly and correctly cited the Board's case law explaining that in cases such as this the Board must undertake a substantive assessment of whether the actual duties and responsibilities to which the employee was returned are either the same as or substantially equivalent in scope and status to the duties and responsibilities held prior to the wrongful discharge, and he directly analyzed this issue. CID at 7-8 (citing *Kerr*, 726 F.2d at 733). The administrative judge discussed the relevant evidence and testimony related to the appellant's reinstatement and the duties of his position, addressed the agency's argument that the change in duties was justified, and explicitly found that the appellant was assigned to a different position with different duties, with a clear implicit finding that those duties were not substantially equivalent in scope and status. CID at 6-11. The agency's mere disagreement with the administrative judge's weighing of the evidence on this point does not establish a basis for review. *Broughton v. Department of Health and Human Services*, 33 M.S.P.R. 357, 359 (1987).

To this end, the agency also argues that an administrative judge with the Equal Employment Opportunity Commission (EEOC) found in a different case

that the work the appellant performed at the Complex was neither "outside his job description or his physical limits" nor "demeaning or atypical of the types of assignments" performed by other 802 ETs, thus suggesting that the appellant's current position and duties are substantially equivalent in scope and status. CPFR File, Tab 1 at 15; CF, Tab 3 at 78. However, not only did this EEOC case involve a separate issue, but the agency raised this argument before the administrative judge and is therefore rearguing issues already raised and properly resolved below. CF, Tab 3 at 9, 13, 59-60; *Broughton*, 33 M.S.P.R. at 359. Although the administrative judge did not specifically discuss the EEOC administrative judge's comment in the initial decision, an administrative judge's failure to mention all of the evidence of record does not mean that he did not consider it in reaching his decision. *Marques v. Department of Health and Human Services*, 22 M.S.P.R. 129, 132 (1984) (recognizing that), *aff'd*, 776 F.2d 1062 (Fed. Cir. 1985) (Table).

Finally, the agency claims in this regard that the appellant's full-time assignment to the Complex does not preclude his ability to do installation and construction work because, "[a]lthough not usual," 802 ETs have performed installation and construction duties at the Complex before, such as installing shelving units, and therefore it *could* satisfy an obligation to assign the appellant some installation and construction work. CPFR File, Tab 1 at 16. However, not only does the agency's argument again merely reargue an issue already raised before and properly decided by the administrative judge, but we find that this contention only underscores the reasoned conclusion that the scope of the appellant's current 802 ET duties are not equivalent to the installation and construction field work performed by the other 802 ETs.

In its petition for review, the agency also argues that the administrative judge ignored newly submitted evidence and, as a result, erroneously concluded that the agency does not have a strong overriding interest or compelling reasons for not assigning the appellant work in the field. CPFR File, Tab 1 at 17. Specifically, the agency disputes the administrative judge's conclusion that to

accept the agency's arguments about the appellant's inability to perform the essential functions of the 802 ET position because he cannot perform enough installation and construction work and agree that it has compelling reasons to assign the appellant the duties of the 346 LMS position, he would have to conclude that the Board's Final Order was incorrect and that the appellant cannot perform the essential functions of the 802 ET position with a reasonable accommodation. *Id.*; CID at 14. The agency alleges instead that "[t]he limited question in the underlying proceeding, and the basis of Board jurisdiction, was whether the [a]gency established the charge of inability to perform the essential functions of the position and whether the [a]gency should have offered an accommodation that would allow the [a]gency to avoid removal—not whether the [a]gency could keep [a]ppellant fully occupied in the field, an issue that the full Board refused to reopen the underlying proceedings to address." CPFR File, Tab 1 at 17. The agency thus argues that it was free to consider evidence as to its ability to keep the appellant fully occupied in the field, and that the administrative judge "disregarded" the new evidence that R.N. had determined that he could not keep the appellant occupied in the field and that no light duty assignments could reasonably be performed in the field. *Id.*

We disagree with the agency for several reasons. To start, the administrative judge by no means "ignored" R.N.'s new declarations explaining that he does not believe that the appellant can perform enough installation and construction work to advance the agency's mission. CF, Tab 11 at 50-52, Tab 12 at 6-9. The administrative judge discussed at length R.N.'s declarations expressing concerns about the appellant's qualifications to perform such tasks, a potential disruption to workplace operations and negative employee morale, and the agency's responsibility to be an "effective steward of taxpayer money." CID at 8-9, 11, 14-16; CF, Tab 11 at 52. He instead found, for example, that the agency's speculative and conclusory claim that accommodating the appellant's disabilities in the field would lower the morale of his coworkers was

unconvincing and unsupported. CID at 16. More importantly, the administrative judge determined that the agency's arguments in total improperly sought to relitigate the conclusions in the Board's Final Order. CID at 14.[7] Furthermore, the Board did not previously "refuse" to reopen the proceedings to address the issue of whether the agency could keep the appellant fully occupied in the field. CPFR File, Tab 1 at 17. Instead, the Board denied the agency's request to solicit testimony from R.N. as to whether a "modified" installation and construction position could constitute a full-time position because we disagreed with the agency's characterization of the Board as creating a "modified" position. Final Order at 20-21. We specifically rejected the agency's contention that it was required to reinstate the appellant to a permanent "modified" position at the Complex because we determined that the appellant could perform 802 ET installation and construction work with and without accommodations. Final Order at 21.

Yet, the agency has reinstated the appellant to a permanent position at the Complex anyway, contrary to reasoning in the Final Order. We agree with the administrative judge that the agency's argument indeed represents a declaration of noncompliance and that the agency's arguments both below and on review misconstrue and misrepresent the Board's January 2024 Final Order, seek to revisit claims already rejected by the Board, and appear to represent an effort to sidestep the Board's reinstatement order. CID at 13-14; *see also Henry v. Department of Veterans Affairs*, 108 M.S.P.R. 458, ¶ 24 (2008) (explaining that enforcement proceedings are not to be used to revisit the merits of an underlying

---

[7] The agency also argues that the administrative judge made an improper theoretical credibility determination against R.N. CPFR File, Tab 1 at 18-19. In the compliance initial decision, the administrative judge noted that he would not find R.N.'s claims in the declarations to be credible, largely because they were inconsistent with R.N.'s previous candid live testimony about ways in which he might accommodate an employee like the appellant, but that the administrative judge did not need to reach this point because the agency may not relitigate the merits of the appeal in a petition for enforcement. CID at 14 n.7. We see no issue with the administrative judge's comment.

appeal). As the administrative judge astutely pointed out, proper compliance with the Board's Final Order could be something like a collaborative discussion between the appellant and his managers to determine the precise contours of an accommodation that could help the appellant with a particular field assignment, which, due to the nature of the work, may occur on an ongoing basis. CID at 15. We agree with the administrative judge that the appellant's claim that he discussed ways he might perform installation and construction tasks and how his medical limitations could be accommodated with R.N. and various coworkers' sounds like an appropriate renewed interactive process contemplated by the Final Order. *Id.*; CF, Tab 13 at 17-23.

Although it may be that after constructively working with the appellant to accommodate him the agency subsequently determines that the appellant cannot perform in the 802 ET position, or, as the administrative judge noted, the parties come to an agreement for the appellant to perform some other duties. CID at 15. However, the agency must first at least attempt to work with the appellant and comply with the Board's order. As the administrative judge observed, the agency may not disregard its obligations under the Rehabilitation Act. CID at 11. We fully concur with the administrative judge's reasoning on this point.

In this regard, the agency also contends that the compliance initial decision impermissibly permits the Board to "micromanage" the agency, allowing Board oversight of the agency to continue in perpetuity, skipping established processes such as equal employment opportunity or negotiated grievance procedures, as the appellant could challenge any accommodation or particular assignment. CPFR File, Tab 1 at 21-23. Similarly, the agency claims that the compliance initial decision gives the appellant "license to prematurely invoke the Board's jurisdiction" without waiting for final agency action by pursuing a new compliance action to challenge any agency effort to assess his ability to perform the essential functions of the 802 ET position. *Id.* at 23. The agency also

expresses concerns as to whether the appellant is qualified to perform direct installation and construction duties. *Id.* at 22.

We are not swayed by the agency's contentions. The compliance initial decision has not inserted the Board as a "micromanager" of the agency's assignment of work. The Board concluded in the removal appeal that the appellant can perform some installation and construction work with and without accommodation and that the agency engaged in disability discrimination based on its failure to provide the appellant a reasonable accommodation. Final Order at 7-18. The compliance initial decision simply requires that the agency engage in a renewed interactive process with the appellant to reach an agreement with him as to his duties as an 802 ET or appropriate accommodations, instead of unilaterally assigning him to work full-time at the Complex based on information and reasons that were rejected in the underlying appeal. CID at 17.

Lastly, the agency argues in its petition for review that the administrative judge factually erred by ignoring record evidence of the appellant's medical limitations and his prior injury on the job. CPFR File, Tab 1 at 19-21. The agency asserts that the Board stated in the Final Order that it "underst[oo]d the agency's concern that it cannot 'simply ignore' medical recommendations that put it on notice of appellant's physical limitations," and argues that it properly relied on medical evidence from the underlying proceedings to conclude that it had compelling reasons for assigning the appellant different duties. *Id.* at 19; *see also* Final Order at 13-14. The agency claims that the appellant's prior medical documentation is "replete with warnings" he could suffer further injury, that the administrative judge ignored hearing evidence from the removal appeal regarding the appellant's prior work-related injury, which is "perhaps inevitable," and that the administrative judge erroneously faulted the agency for not requesting new medical documentation before assessing its ability to keep the appellant fully occupied out in the field. CPFR File, Tab 1 at 19-21.

The agency's assertions are again unavailing for several reasons. Although the Board did indeed comment in the Final Order that the agency cannot simply ignore medical evidence of the appellant's physical limitations, we also cautioned the agency that its arguments on the whole "largely ignore[d]" medical evidence "explicitly indicat[ing] that the appellant *can* perform some installation and construction work." Final Order at 14. And we explicitly found no error in the administrative judge's finding that 802 ETs mostly perform installation and construction work and that the appellant can perform some of this work with accommodations. *Id.* at 21. The agency's assertion above is thus misleading and in opposition to the Board's final decision in this case. Additionally, the administrative judge did not erroneously fault the agency for not requesting new medical documentation from the appellant. Instead, the administrative judge contrasted the facts of this case against one in which the Board found that the agency appropriately altered the appellant's duties based on medical documentation provided upon reinstatement, noting that here there was no new medical documentation, the agency made no attempt to talk with the appellant about any accommodations he may need, and the agency unilaterally decided to assign the appellant the duties of a different position. CID at 13 (citing *Bruton v. Department of Veterans Affairs*, 112 M.S.P.R. 313, ¶¶ 8-9 (2009)). The administrative judge simply highlighted the fact that it appears the agency has done nothing to work with the appellant. Moreover, the agency's arguments regarding the appellant's medical documentation from the removal appeal and his prior injury are again directly contrary to the Board's Final Order in this case and therefore cannot support the agency's continued noncompliance with the Board's reinstatement order. It is well established that an agency cannot refuse to comply with a Board reinstatement order based on reasons that were rejected by the Board in the decision reversing the action. *See Sarver v. Department of the Treasury*, 26 M.S.P.R. 685, 688 (1985).

Finally, because we agree with the administrative judge that the agency is not in compliance with the Board's Final Order, we also disagree with the agency's assertion that the administrative judge's conclusions in the other addendum proceedings were necessarily erroneous.  CPFR File, Tab 1 at 23-24.

**ORDER**

We ORDER the agency to submit to the Clerk of the Board within **60 days** of the date of this Order satisfactory evidence of compliance as described herein. This evidence shall adhere to the requirements set forth in 5 C.F.R. § 1201.183(a) (6)(i), including submission of evidence and a narrative statement of compliance. The agency must serve all parties with copies of its submissions.

The agency's submission should be filed under the new docket number assigned to the compliance referral matter, **SF-0752-22-0425-X-1**.  All subsequent filings should refer to the compliance referral docket number set forth above and should be faxed to (202) 653-7130 or mailed to the following address:

Clerk of the Board
U.S. Merit Systems Protection Board
1615 M Street, N.W.
Washington, D.C. 20419

Submissions may also be made by electronic filing at the MSPB's e-Appeal site (https://e-appeal.mspb.gov) in accordance with the Board's regulation at 5 C.F.R. § 1201.14.

The appellant may respond to the agency's evidence of compliance within 20 days of the date of service of the agency's submission.  5 C.F.R. § 1201.183(a) (8).  If the appellant does not respond to the agency's evidence of compliance, the Board may assume that he is satisfied with the agency's actions and dismiss the petition for enforcement.

The agency is reminded that, if it fails to provide adequate evidence of compliance, the responsible agency official and the agency's representative may be required to appear before the General Counsel of the Merit Systems Protection

Board to show cause why the Board should not impose sanctions for the agency's noncompliance in this case. 5 C.F.R. § 1201.183(c). The Board's authority to impose sanctions includes the authority to order that the responsible agency official "shall not be entitled to receive payment for service as an employee during any period that the order has not been complied with." 5 U.S.C. § 1204(e)(2)(A).

This Order does not constitute a final order and is therefore not subject to judicial review under 5 U.S.C. § 7703(a)(1). Upon the Board's final resolution of the remaining issues in this petition for enforcement, a final order shall be issued which shall be subject to judicial review.

FOR THE BOARD:                    _____
                                  Gina K. Grippando
                                  Clerk of the Board

Washington, D.C.